AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
DEC 11 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )      Case No.   19MJ5498
One Black Samsung Cellular Telephone )
Seized as FP&F No. 20202504000243-01 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960, 963 | Importation of Methamphetamine and Conspiracy to Commit the Same |

The application is based on these facts:

See attached Affidavit of Special Agent Roger Carr, Homeland Security Investigations

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature #5756

S.A. Roger Carr, Homeland Security Investigations
Printed name and title

Sworn to before me and signed in my presence.

Date: 12/11/19

_____
Judge's signature

City and state: San Diego, CA

Hon. Karen S. Crawford, United States Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Special Agent Roger Carr, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of applications for warrants to search the following electronic devices:

> Black Samsung Cellular Telephone
> Seized as FP&F No. 20202504000243-01
> ("Target Device 1")
>
> iPhone in Rose Colored Case
> Seized as FP&F No. 20202504000243-01
> ("Target Device 2") (collectively, "the Target Devices")

as further described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960, and 963 as further described in Attachments B-1 and B-2.

2. The requested warrants relate to the investigation and prosecution of Karinna Maury HERNANDEZ and Delilah Yamilett LOPEZ-MORENO for importing approximately 23.24 kilograms (51.13 pounds) of methamphetamine from Mexico into the United States. *See U.S. v. Hernandez,* Case No. 19-MJ-4755 (S.D. Cal.) at ECF No. 1 (Complaint). The Target Devices are currently in the evidence vault located at the Homeland Security Investigations' Special Agent in Charge San Diego office, 880 Front St., San Diego, California.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

//

1

## BACKGROUND

4. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since September 2001 (then known as the United States Customs Service). I am currently assigned to the HSI Office of the Special Agent in Charge, San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

5. During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.

6. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store

photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

8. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

 a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

 b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

 c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

 d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

 e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

 f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

9. On October 26, 2019, at approximately 8:40 p.m., HERNANDEZ and LOPEZ-MORENO applied for permission to enter the United States at the San Ysidro, California, Port of Entry. HERNANDEZ was the driver and LOPEZ-MORENO was the passenger of a black 2007 BMW 750I registered to HERNANDEZ. After a trained human

3

and narcotics detection canine alerted to the vehicle, the vehicle was referred for secondary inspection. In secondary inspection, Customs and Border Protection Officers discovered 12 packages concealed within both rocker panels of HERNANDEZ's vehicle. The packages weighed approximately 23.24 kilograms (51.12 pounds) in total, and field-tested positive as methamphetamine. Additionally, Homeland Security Investigations (HSI) Special Agents (SA) found the Target Devices concealed between the driver's seat—where HERNANDEZ sat—and the center console of the vehicle. A third cellular telephone was seized from LOPEZ-MORENO's person. HERNANDEZ and LOPEZ-MORENO were subsequently arrested, and the Target Devices were seized from the vehicle.

10. Post-arrest, LOPEZ-MORENO was read her *Miranda* rights and elected to give a statement. LOPEZ-MORENO denied knowledge of the drugs in the vehicle as well as 0.1 grams of a substance that field-tested positive for methamphetamine that was found in LOPEZ-MORENO's bag. LOPEZ-MORENO claimed ownership of a third cellular telephone (not the subject of this affidavit) found on her person and attempted to delete information from that third phone when she was provided access to it post arrest. The Target Devices were seized from the vehicle between HERNANDEZ's seat and the center console.

11. On October 28, 2019, Magistrate Judge Barbara Major found probable cause to charge HERNANDEZ and LOPEZ-MORENO with importation of a controlled substance in violation of 21 U.S.C. §§ 952, 960. *United States v. Hernandez*, No. 19-MJ-4755, ECF 1 (S.D. Cal.). On November 20, 2019, a federal grand jury returned a one-count Indictment charging HERNANDEZ and LOPEZ-MORENO with the same. *United States v. Hernandez*, No. 19-CR-4744-JLS (S.D. Cal.).

12. In light of the above facts, and my own experience and training, there is probable cause to believe that the Target Devices found in HERNANDEZ's vehicle belong to HERNANDEZ given the location of the Target Devices (between HERNANDEZ's driver's seat and the center console) and LOPEZ-MORENO's claim of ownership to a separate, third cellular phone. Furthermore, there is probable cause to believe that

HERNANDEZ was using the Target Devices to communicate with others to further the importation of illicit narcotics into the United States.

13. In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics.

14. According to Department of Homeland Security records, HERNANDEZ began crossing the US/MX Border by vehicle this year on February 18, 2019, and crossed with LOPEZ-MORENO in the vehicle as early as September 1, 2019. Accordingly, I request permission to search the Target Devices for data beginning two weeks before HERNANDEZ and LOPEZ-MORENO's first crossing together in the vehicle, August 18, 2019, and ending on October 27, 2019, the date after HERNANDEZ's arrest.

## METHODOLOGY

15. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.

Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, I will collect the subject cellular telephone and have it subjected to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

18. Law enforcement has not previously attempted to obtain the evidence within the Target Devices sought by this warrant.

**CONCLUSION**

19. Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Devices will yield evidence of HERNANDEZ and LOPEZ-MORENO's violations of Title 21, United States Code, Sections 952, 960 and 963.

20. Because the Target Devices were seized from the vehicle at the time of HERNANDEZ and LOPEZ-MORENO's arrests and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the Target Devices. As stated above, I believe that the appropriate date range for this search is from August 18, 2019, and ending on October 27, 2019.

21. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the items described in Attachments A-1 and A-2 and seize the items listed in Attachments B-1 and B-2 using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Roger Carr
Homeland Security Investigations

Subscribed and sworn to before me this ___ day of December, 2019.

Hon. Karen S. Crawford
United States Magistrate Judge

## ATTACHMENT A-1

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black Samsung Cellular Telephone
> Seized as FP&F No. 20202504000243-01
> ("Target Device 1")

Target Device 1 is currently in the possession of Homeland Security Investigations, .880 Front St., San Diego, CA.

## ATTACHMENT B-1

### ITEMS TO BE SEIZED

Authorization to search Target Device 1 described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in Target Device 1 for evidence described below. The seizure and search of the Target Device 1 shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from Target Device 1 will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 18, 2019, and ending on October 27, 2019:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, Target Device 1; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.